Filed at 11:19 AM
7/30, 2020
Deputy Clerk, U.S. District Court
Middle District of Georgia

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 5:19-CR-56-MTT |
| VS. | : | |
| | : | |
| DEON M. MOORE | : | |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and DEON M. MOORE, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that he has reviewed and discussed the indictment against him in this matter with his attorney and his attorney has explained to defendant her understanding of the government's evidence.

(2)

The defendant understands that he is not required to plead guilty, and that he has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, he would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that he would be entitled to the services of a lawyer at all stages of such a trial. The defendant understands that he would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that



he would have the right to testify in his own behalf, but that he could not be compelled to do so. Defendant has discussed these rights with his attorney. Defendant is satisfied with the services of his lawyer. Defendant knowingly and voluntarily waives his right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 ( 2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. The Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of his rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as follows:

(A)   The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count Two of the indictment which charges defendant with "Sexual Exploitation of a Child," in violation of Title 18, United States Code, Sections 2251(a) and (e).

(B)   That defendant fully understands that his plea of guilty as set forth in Subparagraph



(A), above, will subject him to a maximum sentence on Count Two of thirty (30) years imprisonment (with a mandatory minimum sentence of 15 years imprisonment), a maximum fine of $250,000, a term of supervised release of not less than five (5) years up to life, and a mandatory assessment of $100.00 under 18 U.S.C. § 3013. The defendant also understands that he could be subject to an assessment of $5,000.00 under 18 U.S.C. § 3014. The defendant and the government agree that a sentence of imprisonment of 15 years (180 months) is the appropriate sentence in this case.

(C) The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from his counsel, the government, or the Probation Office. The defendant further acknowledges, understands, and agrees that pursuant to Rule 11(c)(5), Federal Rules of Criminal Procedure, defendant would have the opportunity to withdraw his plea of guilty should the court decline to follow the plea agreement in imposing a sentence of imprisonment of 15 years (180 months) imprisonment. Also pursuant to Rule 11(c)(5), the defendant would have the opportunity to withdraw his plea of guilty if the Court rejected the government's recommendation to dismiss Counts One and Three of the indictment.

(D) The defendant understands fully and has discussed with his attorney that the Court will not be able to determine an advisory guideline sentence until after a presentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that he will have the opportunity to review the presentence investigative report and challenge any facts reported therein.

(E)   Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)   Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)   Defendant understands, and has fully discussed with defendant's attorney, that concerning Count Two the Court shall order total restitution in this case pursuant to 18 U.S.C. §§ 3663A and 2259, and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community. Defendant also agrees pursuant to 18 U.S.C. § 3663A(a)(3), to pay restitution to any victim who is the subject of Count One or Count Three of the indictment and to a list of fourteen (14) additional victims to be filed under seal with the court at the time of the entry of a plea of guilty pursuant to this plea agreement, if the court in its discretion determines that restitution to one or more of those victims is appropriate.

(H)   The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(I)   **Waiver of Appeal Rights and Right of Collateral Attack:**  Understanding that Title 18, United States Code, Section 3742 provides for appeal by a Defendant of the sentence under certain circumstances, Defendant waives any right to appeal the imposition of sentence upon Defendant, excluding the right to appeal the amount of restitution imposed, if any, except in the



event that the District Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the District Court at the time of sentencing, or in the event that the District Court imposes a sentence in excess of the statutory maximum.

(J)   Defendant waives any right to collaterally attack Defendant's conviction and sentence under Title 28, United States Code, Section 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by Title 28, United States Code, Section 2241.

(K)   Defendant waives any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c)(2), except in the event of a future retroactive amendment to the sentencing guidelines which would affect Defendant's sentence.

(L)   Defendant and the Government agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in 18 U.S.C. § 3742(b). If, however, the Government appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

(M)   Defendant acknowledges that this waiver may result in the dismissal of any appeal or collateral attack Defendant might file challenging his conviction or sentence in this case. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the Government, be remanded to the District Court to determine whether Defendant is in breach of this agreement and, if so, to permit the Government to withdraw from the plea agreement.



(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)   That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant.

(B)   That he will move to dismiss Counts One and Three of the indictment.

(C)   If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. The decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court, except insofar as this is a binding plea agreement, defendant would have the opportunity to withdraw his plea of guilty should the court decline to follow the plea agreement in imposing a sentence of imprisonment of 15 years (180 months) imprisonment or if the Court rejected the government's recommendation to

6



dismiss Counts One and Three of the indictment.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that at trial the United States could prove the following beyond a reasonable doubt:

This investigation was begun by the Fairborn, OH Police Department (FOPD) on May 21, 2017. The FOPD was contacted by the mother of RA who reported that RA, a 12-year-old female, had been communicating with an adult male on Facebook and by text messages. The adult male, later identified as defendant Deon M. Moore, sent pictures of his penis to RA on May 18, 2017, and requested to meet with her. He also requested that she send pictures to him. Based on an examination of RA's cellphone, it was determined by investigators that RA had been communicating with Moore from about January 2017 until May 2017. Moore used a Facebook account in the name of "Sharod King" and a telephone number of 478-XXX-XX40 to

7



communicate with RA. The telephone number used by Moore was traced to 4944 York Place, Macon, GA 31204, an address associated with Moore. The Facebook account used by Moore to communicate with RA was traced back to JP at the Macon address through determination of the IP address. It was determined that Moore and JP lived at that address together, and that they have children together.

Investigation by the FOPD detective bureau and examination of Facebook records determined that Moore changed his Facebook name to "Nathaniel Ellis," and that his Facebook account indicated that Moore had numerous Facebook friends who appeared to be teenage females. Investigators obtained copies of the photographs sent by Moore to RA in May 2018. They made contact with deputies at the Bibb County, Georgia Sheriff's Office in May 2018 to obtain their assistance in the investigation. FOPD detectives identified Moore as the person who had been in contact with RA and contacted him by telephone. Moore denied having contacted RA. FOPD detectives asked for the assistance of the Federal Bureau of Investigation (FBI) in June 2018. The FBI's investigation in Macon began September 13, 2018. FOPD detectives gave copies of the evidence they had gathered during their investigation to the FBI for use in the FBI's investigation, and the FBI obtained additional federal search warrants for Facebook records.

The investigation by the FOPD and the FBI determined that Moore used Facebook to find victims. He primarily used two Facebook accounts -- xxx2752 for use of false identities Sharod King and Nathaniel Ellis; and xxx9800 for false identities Jazmine Ellis and Sharde Carter. He moved to use of the second account after being contacted by FOPD detectives. He used false names to communicate with victims on Facebook. He sometimes represented himself to be a female. He would represent himself to be ages from teens to 30s, depending on the victim. He used multiple cellular telephone numbers. He was seeking young, black female girls, and Facebook transcripts indicate that he would ask them their ages. His victims ranged in age from 10 to 16, and he knew they were minors. His victims were from multiple states. He would discuss sex in explicit terms with his victims and would request that they send him nude pictures of their breasts and genitalia. To coerce and induce victims to send sexually explicit pictures and videos of themselves, he would send them explicit pictures and videos, including a video of his penis and masturbation. During the time and scope of this investigation, concerning account xxx9800, Moore began conversation threads with 906 individuals. Concerning Facebook account xxx2752, from January through May, 2017, Facebook records indicate that Moore attempted to contact approximately 400 people, and made contact with 17, including 4 juvenile females. For both accounts, Moore contacted 80 people and engaged them in sustained conversations, thirty of which were juveniles under 18. Four of these juveniles sent child pornography to Moore. Others



sent explicit photographs of themselves, such as pictures of their breasts, which is not actionable child pornography. Almost all received explicit sexual material from Moore which he sent to them to induce, coerce and educate them.

Concerning Jane Doe 2, the victim in Count Two of the indictment, she lives in a state other than Georgia. She communicated with Deon Moore on Facebook from May 5, 2018 until May 19, 2018, at which time Jane Doe 2 was 10 years old. She told him that she was 10 years old and in the 4th grade. She told him the name of the middle school that she attended. He represented himself to be 14, that he lived in Atlanta, and was a lesbian. He sent her fictitious pictures of himself, posing as a female. He asked for pictures of her, and she sent them. He sent her pictures and told her he likes pole dancing. He told her he likes girl porn. On May 15th he asked her for an explicit video, but she said she did not know how to do that, and he sent her a video to demonstrate. She sent him three explicit videos of herself on May 19, 2018, which depicted masturbation and lewd exhibition of the genitals.

Deon Moore was interviewed by agents of the FBI on March 19, 2019. He admitted contacting minor females over the internet through Facebook and Facebook messenger, and he admitted using the names "Sharde Carter," "Nathaniel Ellis," and others to communicate with them. He stated that he deleted the "Nathaniel Moore" account after he was contacted by the police. He stated that he had engaged in this conduct for two or three years. He stated that he assumed an identity to fit the juvenile with whom he was communicating. He admitted to asking juveniles for nude images, and to sending and receiving images from them. He estimated that he had talked to approximately 40 juvenile females, with perhaps 30-40 percent sending him nude images. He described the material received as fully nude images, with some of the juveniles engaged in sexually explicit activity. Most of the juveniles were under 16 years of age. He denied ever meeting a juvenile or having sex with a juvenile under 16.

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.



SO AGREED, this 30th day of July, 2020.

                CHARLES E. PEELER
                UNITED STATES ATTORNEY

BY: *(signature)*
                PAUL C. McCOMMON III
                ASSISTANT UNITED STATES ATTORNEY
                GEORGIA BAR NO. 484650

I, DEON M. MOORE, have read this agreement and had this agreement read to me by my attorney, Christina L. Hunt. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
DEON M. MOORE
DEFENDANT

I, CHRISTINA L. HUNT, attorney for defendant DEON M. MOORE, have explained the indictment and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

_____
CHRISTINA L. HUNT
ATTORNEY FOR DEFENDANT